IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANFORD HEALTH CARE, a California not-for-profit healthcare corporation,<br><br>          Plaintiff,<br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Co. d.b.a BLUE CROSS AND BLUE SHIELD OF ILLINOIS & BLUE CROSS AND BLUE SHIELD OF TEXAS; and DOES 1 THROUGH 25, INCLUSIVE,<br><br>          Defendants. | Case No. |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, doing business in Illinois as its unincorporated division Blue Cross and Blue Shield of Illinois ("BCBSIL") and doing business in Texas as its unincorporated division Blue Cross and Blue Shield of Texas ("BCBSTX" and collectively, "HCSC"), hereby removes Case No. 2023 L 002009, *STANFORD HEALTH CARE, a California not-for-profit healthcare corporation v. HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Co. d.b.a. BLUE CROSS AND BLUE SHIELD OF ILLINOIS and BLUE CROSS AND BLUE SHIELD OF TEXAS; and DOES 1 THROUGH 25* (the "State Action") pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division. Removal is proper because federal question jurisdiction exists, given that some of the claims at issue are completely preempted by Section 502(a) of the

Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). In support of this Notice, HCSC states as follows:

## I. BACKGROUND

1. On February 27, 2023, Plaintiff Stanford Health Care ("Stanford") filed its Complaint at Law in the State Action. *See* Plaintiff Stanford Health Care's Complaint at Law, attached hereto as Exhibit 1. On May 8, 2023, Stanford filed its First Amended Complaint at Law (the "First Amended Complaint" or "FAC"). *See* Plaintiff Stanford Health Care's First Amended Complaint at Law, attached hereto as Exhibit 2. HCSC was served with the Summons and the First Amended Complaint on June 21, 2023. *See id.*

2. In the First Amended Complaint, Stanford alleges that it rendered "medically necessary" treatment to 95 individuals (the "Patients") who are members of health plans sponsored, financed, administered, and/or funded by HCSC (the "Medical Claims") and that HCSC has paid $3,768,166.90 on these Medical Claims as set forth in a spreadsheet attached as Exhibit A to the First Amended Complaint (the "Claims Spreadsheet"), but that HCSC still owes Stanford additional payment on the Medical Claims.[1] *See, e.g.*, Ex. 2, ¶¶ 11, 14, 18, 24, 33, 65.

3. The First Amended Complaint asserts causes of action for (1) breach of implied-in-fact contract; and in the alternative (2) a *quantum meruit* claim in connection with the alleged Medical Claims. *See* Ex. 2, ¶¶ 25-70.

4. Stanford's Count I for breach of implied-in-fact contract seeks $4,926,127.71, which is the purported underpaid amount for the Medical Claims based on rates allegedly set forth

---

[1] While Stanford alleges additional payment is owed on 95 claims set forth in the Claims Spreadsheet, the Claims Spreadsheet lists only 94 claims. *See* Ex. 2, ¶ 11 and Exhibit A thereto. Nevertheless, HCSC refers to the First Amended Complaint as implicating 95 claims to remain consistent with the allegations in the First Amended Complaint.

in a written contract between Stanford and non-party Anthem Blue Cross ("Anthem"). *Id.*, ¶¶ 25–47.

5. Stanford's alternative Count II for *quantum meruit*, *see id.*, ¶¶ 48-70, seeks additional payment for the Medical Claims at the purported "reasonable and customary" value of the rendered services. *Id.*, ¶ 67. Stanford alleges that the "reasonable and customary" value of the services rendered is $20,090,224.31. *Id.*

6. Stanford further seeks interest, attorney's fees, and costs in Count I and II. *Id.*, ¶¶ 47, 70.

## II. TIMELY REMOVAL

7. This Notice of Removal is timely because it is being filed within 30 days of the receipt of the First Amended Complaint filed by Stanford, and less than a year after the commencement of the State Action. *See supra* ¶ 2; 28 U.S.C. § 1446(b).

## III. PROPER VENUE

8. Venue is proper because this Court is the United States District Court for the district and division embracing the place where the State Action is pending. *See* 28 U.S.C. § 1441(a).

## IV. FEDERAL QUESTION JURISDICTION

9. HCSC removes this case to federal court because it involves claims by Stanford that seek or relate to benefits provided under an employee welfare benefit plan that are governed by ERISA, and thus, Stanford's state law claims are preempted by ERISA. The United States District Court for the Northern District of Illinois therefore has original jurisdiction over Stanford's causes of action under 28 U.S.C. § 1331, in that federal question jurisdiction exists, and HCSC may remove the action to this Court under 28 U.S.C. § 1441.

10. Federal question jurisdiction exists when state-law claims are completely preempted by Section 502(a) of ERISA. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004). Section 502(a) of ERISA completely preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" because such a cause of action "conflicts with the clear congressional intent to make the ERISA remedy exclusive[.]" *Id.* "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B)." *Id.* at 210.

11. As a result, complete preemption under Section 502(a) is "an exception to the well-pleaded complaint rule," and a case may be removed to federal court even though a complaint does not assert a cause of action under federal law if the plaintiff asserts a state-law cause of action that falls within the scope of Section 502(a). *Id.* at 207–08.

A. **Stanford's Causes of Action Are Premised Upon Employee Welfare Benefit Plans Governed by ERISA.**

12. ERISA's provisions apply to any "employee benefit plan" that is "established or maintained … by an employer engaged in commerce or in industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). ERISA, in turn, defines an "employee welfare benefit plan" as "any plan, fund, or program … established or maintained by an employer … for the purpose of providing … medical surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment." 29 U.S.C. § 1002(1).

13. In the First Amended Complaint, Stanford alleges that "at all relevant times Patients were enrollees and/or beneficiaries of health plans sponsored, financed, administered, and/or funded by HCSC." *See* Ex. 2, ¶ 12.

14. At least eighteen (18) of the Medical Claims at issue in Stanford's First Amended Complaint involve Patients that received health coverage through ERISA governed plans.[2] Specifically, the summary plan description ("SPD") outlining eligible benefits under the plan for the Patients associated with Medical Claim Nos. 1, 2, 19, 20, 28, 29, 39, 43, 44, 45, 55, 61, 66, 67, 71, 77, 78 and 89 in the Claims Spreadsheet establishes that these plans are governed by ERISA (the "ERISA Plans"). *See* Declaration of Stacy Burns ("Burns Decl."), attached as Exhibit 3, at ¶¶ 15-32 & Exs. A-1, B-1, C-1, D-1, E-1, F-1, G-1, H-1, I-1, J-1, K-1, L-1, M-1, N-1, O-1, P-1, Q-1, R-1 thereto.

15. The ERISA Plans all identify a Plan Administrator, making clear the plans are sponsored by employers for the purpose of providing benefits for medical costs. *See* Ex. 3 at Ex. A-1, p. I-13; Ex. B-1, p. 106; Ex. C-1, p. I-13; Ex. D-1, p. 2; Ex. E-1, p. 67; Ex. F-1, p. 67; Ex. G-1, p. 1; Ex. H-1, p. 110; Ex. I-1, p. 237; Ex. J-1, p. 237; Ex. K-1, p. 49; Ex. L-1, p. 2; Ex. M-1, p. I-13, Ex. N-1, p. 142; Ex. O-1, p. 106; Ex. P-1, p. I-13; Ex. Q-1, p. 321; and Ex. R-1, p. 50. The ERISA Plans holds themselves out to enrollees as being governed by ERISA; they contain a section entitled "Your Rights Under ERISA" or "Statement of ERISA Rights" that provides, in relevant part, "As a participant in the [ERISA Plan], you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)." *Id.* at Ex. A-1, pp. I-15–I-18; Ex. B-1, p. 103-104; Ex. C-1, p. I-15-I-17; Ex. D-1, p. 87-88; Ex. E-1, pp. 64-67;

---

[2] HCSC's investigation into the Patients and Medical Claims is ongoing, particularly as HCSC does not have a complete set of information regarding the healthcare claims in the Claims Spreadsheet at this time. For instance, HCSC was unable to locate a healthcare claim corresponding with twenty-three (23) of the accounts listed on the Claims Spreadsheet based on the information provided in the Claims Spreadsheet, which notably lacks identifying healthcare claim numbers. Patients other than those specifically identified in this Notice of Removal may also have plans that are governed by ERISA, and HCSC expressly reserves its right to identify such Patients, plans governed by ERISA, and additional healthcare claims in dispute that are preempted by ERISA as that information becomes known to HCSC.

Ex. F-1, pp. 64-67; Ex. G-1, p. 2; Ex. H-1, pp. 103-106; Ex. I-1, p. 242; Ex. J-1, p. 242; Ex. K-1, p. 54; Ex. L-1, p. 87; Ex. M-1, p. I-15-I-17; Ex. N-1, p. 139; Ex. O-1, pp. 103-104; Ex. P-1, pp. I-15-I-18; Ex. Q-1, p. 266; and Ex. R-1, p. 43. The ERISA Plans also discuss administration of the ERISA Plans and identify BCBSIL as the Claims Administrator or Benefits Administrator. *See, e.g.*, Ex. 3 at Ex. E-1, p. 88; Ex. F-1, p. 88; Ex. G-1, p. 1; Ex. I-1, p. 188; Ex. J-1, p. 188; Ex. N-1, p. 128; Ex. Q-1, p. 1; and Ex. R-1, p. 1. Further, many of the ERISA Plans identify that plan benefits are paid out of a trust and/or plan fund or that the trustees will have the sole authority to authorize the payment of plan benefits. *Id.* at Ex. A-1, pp. I-10–I-11; Ex. D-1, p. 80; Ex. H-1, p. 106; Ex. I-1, p. 238; Ex. J-1, p. 238; Ex. L-1, p. 80; Ex. N-1, p. 142; Ex. O-1, p. 106; Ex. P-1, pp. I-10–I-11; and Ex. Q-1, p. 262.

16. The ERISA Plans are "employee benefit plan[s]" established by an employer for the purpose of providing health benefits and are therefore governed by ERISA. *See* 29 U.S.C. § 1002(3).

### B. Stanford's Claims Are Completely Preempted By ERISA.

17. A claim is subject to complete preemption under ERISA when a plaintiff (1) "could have brought [its] claim under ERISA § 502(a)(1)(B)"; and (2) "there is no other legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Here, Stanford's Count I for breach of implied-in-fact contract and Count II for *quantum meruit* are completely preempted by ERISA with respect to at least eighteen (18) of the Medical Claims because both *Davila* prongs are met.

18. The first *Davila* factor is met as to Stanford's state law claims because there is evidence of an assignment as to these eighteen Medical Claims sufficient to establish that Stanford "could have brought its claims under ERISA." *Davila*, 542 U.S. at 210.

19. In the First Amended Complaint, Stanford alleges that it submitted claims to HCSC for services rendered to Patients as reflected in its Claims Spreadsheet. *See* Ex. 2, ¶¶ 14–17. Here,

Stanford submitted claims for benefits for Claim Nos. 1, 2, 19, 20, 28, 29, 39, 43, 44, 45, 55, 61, 66, 67, 71, 77, 78 and 89 (the "Preempted ERISA Claims") pursuant to an assignment of benefits received from each of the Patients. *See* Ex. 3, ¶¶ 15–32. These Claim Nos., Patient initials, the ERISA Plan under which they were submitted, the dates of service for the claim and the exhibit at which the proof of assignment appears for the Preempted ERISA Claims are as follows:

| Claim No. | Patient Initials | Plan[3] | Dates of Service | BlueSquared Documentation Evidencing Assignment |
|---|---|---|---|---|
| 1 | S.A. | Unite Here Health | 6/3/20 | Ex. 3, ¶ 15 & Exhibit A-2 thereto. |
| 2 | R.A. | Line Construction Benefit Fund | 2/22/21-3/1/21 | Ex. 3, ¶ 16 & Exhibit B-2 thereto |
| 19 | J.C. | Unite Here Health | 6/1/20-7/6/20 | Ex. 3, ¶ 17 & Exhibits C-2, C-3 thereto. |
| 20 | S.D. | National Elevator Industry | 6/30/20 | Ex. 3, ¶ 18 & Exhibit D-2 thereto. |
| 28 | J.F. | State Farm Mutual Automobile Insurance | 7/16/2020 | Ex. 3, ¶ 19 & Exhibit E-2 thereto. |
| 29 | J.F. | State Farm Mutual Automobile Insurance | 2/25/21-4/16/21 | Ex. 3, ¶ 20 & Exhibit F-2 thereto. |
| 39 | S.J. | Williams Lea Tag Inc. | 3/10/21 | Ex. 3, ¶ 21 & Exhibit G-2 thereto. |
| 43 | D.K. | Line Construction Benefit Fund | 12/13/21-12/15/21 | Ex. 3, ¶ 22 & Exhibit H-2 thereto. |
| 44 | T.K-H. | AT&T Services, Inc. | 12/22/20 | Ex. 3, ¶ 23 & Exhibit I-2 thereto. |
| 45 | T.K-H. | AT&T Services, Inc. | 12/15/20 | Ex. 3, ¶ 24 & Exhibit J-2 thereto. |
| 55 | D.M. | Sidley Austin LLP | 1/3/17-1/31/17[4] | Ex. 3, ¶ 25 & Exhibit K-2 thereto. |
| 61 | J.M. | National Elevator Industry | 9/9/20 | Ex. 3, ¶ 26 & Exhibit L-2 thereto. |
| 66 | E.O. | Unite Here Health | 11/20/20-12/11/20 | Ex. 3, ¶ 27 & Exhibit M-2 thereto. |

---

[3] These are attached as Exhibits A-1, B-1, C-1, D-1, E-1, F-1, G-1, H-1, I-1, J-1, K-1, L-1, M-1, N-1, O-1, P-1, Q-1, and R-1 to Ex. 3, Burns Decl.

[4] Claim No. 55 corresponds with a submitted claim by Stanford with dates of service January 3, 2017 to January 25, 2017. *See* Exhibit 3, ¶ 25, but this Notice of Removal refers to the dates of service as January 3, 2017 to January 31, 2017 to remain consistent with the allegations in the First Amended Complaint. *See* Ex. 2 at Ex. A.

| Claim No. | Patient Initials | Plan[3] | Dates of Service | BlueSquared Documentation Evidencing Assignment |
|---|---|---|---|---|
| 67 | R.O. | W.W. Grainger, Inc. | 3/3/21-3/4/21 | Ex. 3, ¶ 28 & Exhibit N-2 thereto. |
| 71 | A.P.C. | Line Construction Benefit Fund | 10/31/20-11/1/20 | Ex. 3, ¶ 29 & Exhibit O-2 thereto. |
| 77 | C.P. | Unite Here Health | 4/26/21 | Ex. 3, ¶ 30 & Exhibit P-2 thereto. |
| 78 | C.L.P. | AT&T Services, Inc. | 5/3/20 | Ex. 3, ¶ 31 & Exhibit Q-2 thereto. |
| 89 | D.S. | Sprint | 11/19/19 | Ex. 3, ¶ 32 & Exhibit R-2 thereto. |

20. In connection with the Preempted ERISA Claims, Stanford submitted claims for benefits to Anthem, the local California Blue Cross and Blue Shield licensee. Ex. 3, ¶¶ 12, 14–32. Anthem then transmitted Stanford's submitted claim information to BCBSIL via the Blue Cross and Blue Shield Association's BlueSquared Inter-Plan Messaging System ("BlueSquared"). *Id.* BlueSquared contains a field titled "Assignment of Benefits," which is intended to identify whether a provider has submitted a claim pursuant to an assignment of benefits. *Id.*, ¶ 13. The BlueSquared documentation for the Preempted ERISA Claims contains a "Y" next to "Assignment of Benefits." *Id.*, ¶¶ 15–32 & Exs. A-2 p. 3; B-2, p. 3; C-2, p. 3; C-3, p. 3; D-2, p. 3; E-2, p. 3; F-2, p. 3; G-2, p. 3; H-2, p. 3; I-2, p. 3; J-2, p. 3; K-2, p. 3; L-2, p. 3; M-2, p. 3; N-2, p. 3; O-2, p. 3; P-2, p. 1; Q-2, p. 3; R-2, p. 3 thereto.

21. A claim form may be used as evidence of an assignment to establish that a provider "could have brought [its] claims under ERISA." *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 597–98 (7th Cir. 2008) (declining to disturb lower court's conclusion that the provider held an assignment based on a claim form evidencing assignment of benefits); *see also Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (11th Cir. 2009).

22. In particular, checking or marking boxes on a claim form that deals with assignment is deemed sufficient to support assignee status for purposes of removal based on complete ERISA preemption. *Beverly Oaks Physicians Surgical Ctr., Ltd. Liability Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 441 (9th Cir. 2020) (finding valid assignment of benefits was shown where the "appropriate box on the claim form indicat[ed] that [provider] was pursuing plan benefits through a patient assignment."); *Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla.*, 248 F. Supp. 3d 1304, 1312 (M.D. Fla. 2017) (checked "Y" at box 53 on claim form sufficiently establishes assignment and standing for removal under the first prong of *Davila*); *Bailey v. Blue Cross & Blue Shield of Tex., Inc.*, No. 4:21-cv-0917, 2022 U.S. Dist. LEXIS 39582, at *14–15 (S.D. Tex. Jan. 14, 2022) (checked boxes in Form 1500 of submitted claims constitute sufficient evidence of assignment for purposes of establishing standing to sue under ERISA and collecting authorities holding same); *S. Fulton Dialysis, LLC v. Caldwell*, No. 1:19-CV-00979-SCJ, 2019 U.S. Dist. LEXIS 217476, at *8–10 (N.D. Ga. Dec. 17, 2019) (considering claim form with marked "Y" in box 53 of claim form as a representation by provider that it had an assignment of benefits sufficient to establish standing for removal based on ERISA complete preemption). As such, claim forms and documents reflecting information submitted as part of a claim form can constitute evidence of assigned medical claims and are sufficient to establish that a healthcare provider like Stanford, "could have brought [its] claims under ERISA[,]" thereby satisfying the first prong of *Davila*.

23. The second *Davila* prong is also satisfied because Stanford's state claims do not implicate a legal duty that is independent of ERISA. *Davila*, 542 U.S. at 210; *see also Scarber v. United Airlines, Inc.*, No. 15 C 9147, 2016 U.S. Dist. LEXIS 10634, at *9 (N.D. Ill. Jan. 29, 2016) ((finding ERISA preemption where the state law claim "derives entirely from the particular rights

and obligations" established by an ERISA plan, and does not implicate any independent legal duty) (quoting *Davila*, 542 U.S. at 213)).

24. Stanford's claims for breach of implied-in-fact contract and *quantum meruit* are both premised on the Preempted ERISA Claims' Patients' health plan benefits, as set forth in the ERISA Plans, as well as the existence of coverage and other obligations in the ERISA Plans. To start, Stanford's claims both seek purported underpayments and/or nonpayments on the Medical Claims for allegedly "medically necessary" care and/or services and/or supplies. *See e.g.*, Ex. 2, ¶¶ 11, 14–19, 32–35, 40–42, 45, 49–50, 52, 60–62. Per Stanford, "HCSC received premium payments for Patients' enrollment and coverage in HCSC's respective health plans" and HCSC purportedly promised the Patients it would pay for "emergency and necessary medical treatment … in exchange for Patients' premiums." *Id.*, ¶¶ 20–21, 40, 60. Accordingly, Stanford's assertion that HCSC is required to pay Stanford for "medically necessary" care as a result of Patients' premium payments for enrollment and coverage in HCSC's health plans arises entirely and solely out of obligations and terms of coverage set forth in the ERISA Plans. Moreover, Stanford further alleges that HCSC's obligation to pay for the "medically necessary" care and/or services and/or supplies rendered under both its breach of implied-in-fact contract and *quantum meruit* claims is subject to and limited by "co-payments, deductibles and co-insurance amounts, if any[,]" *see* Ex. 2, ¶¶ 35, 53, 63, all of which are forms of member responsibility that is dictated by a health benefit plan. By Stanford's own express allegations, any purported amount that HCSC owes it is subject to health benefit plan terms concerning member responsibility for the rendered services, including those set forth in the ERISA Plans. Further, as set forth in the Burns Decl., charges on Claim Nos. 28, 39, 43 and 89 were not approved for payment because they were deemed not "medically necessary" as set forth in the SPD for Claim Nos. 28, 39, 43 and 89, and charges on Claim 78.

were not approved for payment because, per the SPD applicable to Claim No. 78, the specific medication billed is covered only under the CVS Caremark Specialty Pharmacy as set forth in the SPD. Ex. 3, ¶¶ 19, 21–22, 31–32 & Exs. E-1, E-3, G-1, G-3, H-1, H-3, Q-1, Q-3, R-1, R-3, R-4 thereto. Stanford's claims as to the Preempted ERISA Claims, therefore, arise out of, and necessarily depend upon, the rights, obligations, terms and conditions of coverage contained in plans that, as established above, are "employee benefit plans" governed by ERISA.

25. While Stanford alleges that HCSC verified benefits and preauthorized services, at no point does Stanford allege that HCSC made any promises or representations to pay amounts other than what is called for in the ERISA Plans for the Preempted ERISA Claims or provided information that is inconsistent with the terms of that health plan. *See generally* Ex. 2. To the contrary, whether Stanford is entitled to any payment for the Preempted ERISA Claims rests entirely on whether the ERISA Plans provide coverage for the services in question for that claim. Stanford even alleges the amount that HCSC is obligated to pay Stanford for the Preempted ERISA Claims is expressly subject to member responsibility—"co-payments, deductibles and co-insurance amounts, if any[,]"—and which is dictated solely by the terms of the ERISA Plans. Stanford's only recourse for the relief sought, therefore, arises exclusively under ERISA, and Stanford's state law causes of action do not rest on some independent legal duty in HCSC.

26. In sum, while Stanford styles its claims in the First Amended Complaint as arising under state law, its allegations as to the ERISA Preempted Claims are squarely premised on coverage terms contained in the ERISA Plans for those claims. As such, Stanford's claims are "more properly characterized as a denial of benefits claim under Section 502(a) and removal of this action from state court [is] proper." *Murphy v. Reliance Standard Life Ins. Co.*, No. 04 C 1751, 2004 U.S. Dist. LEXIS 19428, at *12–13 (N.D. Ill. Sep. 24, 2004) (finding complete ERISA

preemption of state law contract claim); *see also Anderson v. Rockford Prods. Corp.*, Case No. 92 C 20125, 1993 U.S. Dist. LEXIS 2114, at *10 (N.D. Ill. Feb. 25, 1993) (ERISA preemption "applies to common law causes of action based on the alleged improper processing of a claim for benefits under an employee benefit plan.").

27. ERISA provides the exclusive remedy for this action, and Stanford cannot avoid complete preemption by asserting state law causes of action. *Davila*, 542 U.S. at 209; *see also McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 425–26, 429 (7th Cir. 2005) (holding that the Stanford's "state law claims were preempted by ERISA."); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1485, 1489–90 (7th Cir. 1996) (holding that ERISA preempted state-law claims arising out of denial of coverage under an ERISA plan); *Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 347 (7th Cir. 2019) ("State-law civil claims involving . . . welfare benefits . . . governed by ERISA are completely preempted by ERISA.").

28. Because Stanford's First Amended Complaint is "derive[d] entirely from the particular rights and obligations established by" the ERISA Plan, ERISA section 502(a) completely preempts those claims. *Davila*, 542 U.S. at 213–14; *Scarber*, 2016 U.S. Dist. LEXIS 10634, at *9. Accordingly, the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1441.

## V. SUPPLEMENTAL JURISDICTION

29. Federal jurisdiction over any one claim is sufficient to support removal. *Garcia v. AMTRAK*, No. 05 C 4413, 2006 U.S. Dist. LEXIS 55770, at *5 (N.D. Ill. Aug. 10, 2006); *see also Carmel Specialty Surg. Ctr. v. United Healthcare Servs.*, No. 1:15-cv-02004-JMS-TAB, 2016 U.S. Dist. LEXIS 60108, at *4–7 (S.D. Ind. May 3, 2016) (exercising supplemental jurisdiction over all claims where there was "at least one claim that is preempted by ERISA[.]"). Because federal

question jurisdiction exists over some portion of Stanford's claims, the other claims should likewise remain in this Court under 28 U.S.C. § 1367(a).

30. Under Section 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to the claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Claims are part of the "same case or controversy" if they "derive from a common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Even a loose factual connection is sufficient to confer jurisdiction. *See Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

31. Here, Stanford's claims all relate to the same common nucleus of operative facts because they all relate to reimbursement for claims that Stanford submitted through the BlueCard program after Stanford purportedly provided medical services to HCSC members or beneficiaries, or to members or beneficiaries of plans sponsored, financed, administered, and/or funded by HCSC. *See, e.g.*, Ex. 2, ¶¶ 12, 29–32. Moreover, Stanford alleges that HCSC engaged in identical conduct with respect to each claim in the Claims Spreadsheet, which purportedly gives rise to Stanford's theories for recovery against HCSC as to each of those 95 healthcare claims. *See, e.g.*, Ex. 2, ¶¶ 17–20. All of Stanford's claims in this action, therefore, "derive from a common nucleus of operative facts" such that they form the "same case or controversy" under 28 U.S.C. § 1367(a). *Corp. Res., Inc. v. Se. Suburban Ambulatory Surgical Ctr., Inc.*, 774 F. Supp. 503, 506 (N.D. Ill. 1991); *Liberty Mut. Ins. Co. v. Constr. Mgmt. Servs., Inc.*, No. 99 C 6906, 2001 U.S. Dist. LEXIS 15739, at *11–12 (N.D. Ill. Sept. 28, 2001). The Court should therefore exercise jurisdiction over the entire controversy.

32. Moreover, in cases involving the ERISA civil enforcement provision, if a defendant demonstrates that one of the plaintiff's claims is completely preempted by ERISA, a court may exercise supplemental federal jurisdiction over the remaining state law claims. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1138 (10th Cir. 2014) ("Although we have concluded that most of Salzer's claims are not preempted, federal jurisdiction over any one claim is sufficient to support removal."); *Comrie v. IPSCO Inc.*, No. 08-cv-03060, 2008 U.S. Dist. LEXIS 100727, at *14-15 (N.D. Ill. Dec. 10, 2008) (finding that the court had supplemental jurisdiction over both the claims which had been preempted and the remaining state law claims when defendants showed that at least one state law claim was preempted by ERISA); *Anderson*, 1993 U.S. Dist. LEXIS 2114, at *7–8 (same); *Cox v. Gannett Co.*, No. 1:15-cv-02075-JMS-DKL, 2016 U.S. Dist. LEXIS 48808, at *21 (S.D. Ind. Apr. 12, 2016) (same); *Estate of Coggins v. Wagner Hopkins Inc.*, 174 F. Supp. 2d 883, 889 (W.D. Wis. 2001) (same).

33. Indeed, courts routinely exercise supplemental jurisdiction over an entire action where ERISA preempts one cause of action related to one medical claim among many. *Carmel*, 2016 U.S. Dist. LEXIS 60108, at *4-7 (exercising supplemental jurisdiction over all claims because there was "at least one claim that is preempted by ERISA[.]"); *Neurological Res., P.C. v. Anthem Ins. Cos.*, 61 F. Supp. 2d 840, 843 n.1 (S.D. Ind. 1999) ("This court has subject matter jurisdiction over all the claims arising from insurance policies governed by ERISA. The claims arising from insurance policies not governed by ERISA are within this court's supplemental jurisdiction under 28 U.S.C. § 1367(a)."); *Markey v. Aetna Health Inc.*, No. SA-11-CA-1075-XR, 2012 U.S. Dist. LEXIS 27025, at *19–20 (W.D. Tex. Feb. 29, 2012).

34. The Court should thus exercise supplemental jurisdiction over Stanford's state law causes of action, given eighteen (18) healthcare claims in dispute relate to a benefit plan governed

by ERISA, and ERISA completely preempts Stanford's causes of action as to those healthcare claims for the reasons set forth above. *See supra* ¶¶ 15–28. Even if one health care claim is shown to implicate complete ERISA preemption that is sufficient to support exercising supplemental jurisdiction over the remaining medical claims. *See supra* ¶¶ 29–33.

## VI. COMPLIANCE WITH ADDITIONAL REMOVAL PROCEDURES

35. HCSC has fully complied with all of the procedural requirements for removal set forth in 28 U.S.C. § 1446.

36. In accordance with 28 U.S.C. § 1446(a), HCSC has filed copies of all process, pleadings, and orders on file in the State Action with this Notice of Removal. *See* Exhibits 1, 2 and 4. A true and correct copy of the Cook County Circuit Court Case Information Summary for the State Action as Exhibit 5. *See* 28 U.S.C. § 1446(a).

37. HCSC will provide this Notice of Removal to Stanford, through its counsel of record in the State Action, Marcus R. Morrow, Kenneth J. Dusold, and Mallory B. McTarnaghan, The Law Offices of Stephenson, Acquisto & Coleman, Inc., 20 N. Clark St., Suite 3300, Chicago, IL 60602, and will promptly file a copy of this Notice of Removal in the Circuit Court of Cook County, Illinois, County Department, Law Division, before which the State Action was pending. *See* 28 U.S.C. § 1446(d).

38. HCSC is contemporaneously filing a Civil Cover Sheet and Notification as to Affiliates pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Local Rule 3.2 with this Notice of Removal.

39. As HCSC, doing business as Blue Cross and Blue Shield of Illinois and Blue Cross and Blue Shield of Texas, is the only named defendant in the State Action, HCSC need not obtain consent as to removal.


## VII.     CONCLUSION

40. WHEREFORE, HCSC hereby gives notice that this action is removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern District and requests that this Court exercise jurisdiction over this action and grant any relief it deems just and proper.

DATED: July 21, 2023                            Respectfully submitted,

By: */s/ Martin J. Bishop*
Martin J. Bishop
Karen E. Vaysman
Taylor L. Kollmansberger
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
mbishop@reedsmith.com
kvaysman@reedsmith.com
tkollmansberger@reedsmith.com
T: 312.207.1000
F: 312.207.6400

Amir Shlesinger (*pro hac vice forthcoming*)
REED SMITH LLP
355 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
AShlesinger@ReedSmith.com
T: 213-457-8000
F: 818-309-9038

*Attorneys for Health Care Service Corporation dba Blue Cross and Blue Shield of Texas and Blue Cross and Blue Shield of Illinois*

**CERTIFICATE OF SERVICE**

      I, Marin J. Bishop, hereby certify that, on July 21, 2023, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the ECF System, which will send notice to all counsel of record in this lawsuit. I hereby further certify that I served the foregoing via email on the following:

Marcus R. Morrow, Esq.
Kenneth J. Dusold, Esq.
Mallory B. McTarnaghan, Esq.
Law Offices of Stephenson, Acquisto
& Coleman, Inc.
20 N. Clark St., Suite 3300
Chicago, IL 60602
mmorrow@sacfirm.com
kdusold@sacfirm.com
mmctarnaghan@sacfirm.com

                                                                             */s/ Martin J. Bishop*